### STEPHENSON *v.* BROOKLYN CROSS-TOWN R. Co.*

(*Circuit Court, E. D. New York.* July 25, 1881.)

1. PATENTS FOR INVENTIONS—IMPROVEMENT IN STREET-CARS—WANT OF NOVELTY—PATENT No. 142,810.

Where a patent was claimed for an invention for an improvement in street-cars, the device being one for opening and closing a door, and it was shown, as a defense to an action for an infringement, that some years prior to the time when it was said to have been invented another person made a machine intended for the purpose of opening and closing a door, similar in all its essential features to that upon which the patent was claimed, and used it during two weeks to open and close a door, and numerous persons saw the machine in operation, though the device was not applied to the door of a car, the defense of want of novelty must be *held* to have been made out, and patent No. 142,-810 is void.

2. SAME—PATENT No. 161,568.

In a suit for alleged infringement of a patent for a device for signaling drivers on street-cars, consisting of two bell-cords with pull-straps passing along the lower margin of the roof on opposite sides of the car, and connecting directly with a bell or gong attached to the outside of the driver's end of the car, *held*, that there was no novelty in the use of cord or pull-straps, nor in the length of the pull-straps; nor was any new and different result attained by the change of the location of the cord, etc., from the top of the car to the lower margin of the roof, nor in duplicating the cord, etc.; nor was there a patentable combination of the cord and pull-straps with the car, or the sides of the car, effected by placing the cord, etc., along the side of the car. *Held*, also, that the addition of pendants to the cord, and drawing the cord taut, was not sufficient to support the patent, since attaching pendants to a cord is not a new idea, nor was it shown that a taut cord was a necessary feature. Patent No. 161,568 is void.

*Reported by R. D. & Wyllys Benedict.

3. SAME—PATENT No. 167,585.

   A device consisting of a mirror so arranged in connection with the front hood of a car as to enable the driver to see into the car without, turning round, is not an accomplishment of a new effect by a peculiar and novel method of using a mirror, and patent No. 167,585 is void.

*George Gifford*, for complainant.

*Francis Rawle*, for respondent.

BENEDICT, D. J.  This action is founded upon three several patents for improvements in street-cars, issued to or owned by the plaintiff, John Stephenson.  The nominal defendant is the Brooklyn Cross-Town Railroad Company, but the real defendant is stated to be the firm of J. G. Brill & Co., of Philadelphia, the builders of the cars which are alleged to infringe upon the patents sued on.  These patents will be considered in the order in which they are set forth in the bill.  The first patent set forth in the bill, No. 142,810, is for an invention made by John A. O'Haire.  It was issued September 16, 1873, and afterwards assigned to the plaintiff.  The invention secured by this patent is stated in the specification to consist in—

   "A rod passing from the front to the rear of the car through a hollow bar, from which the hand-straps are suspended, and which has a crank or lever secured to each end.  The front lever is in easy reach of the driver, while the rear one carries a roller which works up and down in a rectangular frame secured to the rear edge of the door, and through which the door is moved back and forth."

The claim is for the rod, the crank or lever, and guiding frame secured to the door, and combined with an operating lever for the driver, substantially as shown and described.  In regard to this patent the question has been raised whether it is not by its terms limited to a device where the rock shaft is placed within a hollow bar.  If the patent be so. limited, it is conceded that no infringement of it has been proved.

Upon this question, although there is something to be said in favor of the construction contended for by the defendant, I incline to agree with the plaintiff that the location of the rock shaft within a hollow bar is not an essential feature of the invention described in the patent.  I shall therefore, on this occasion, consider the patent as not requiring the rock shaft to turn within a hollow bar.  So understood, the patent is for a device for opening and closing a door, consisting of a rock shaft, a lever attached to one end of the shaft, and also secured to the door by a guiding frame, so arranged that a person by means of a lever attached to the other end of the shaft, can open and close the door.  To this patent, so understood, several defenses

are interposed, only one of which I find it necessary to pass upon. That defense is want of novelty.   The testimony shows that in 1869, some years prior to the time when O'Haire is said to have invented his machine, one Samuel H. Little, upon the suggestion of his son-in-law, who was superintending a street railroad in St. Louis, made a machine intended for the purpose of opening and closing a car door, which machine is conceded to have been similar to that described in O'Haire's patent in all its essential features.

The existence of Little's machine is fully proved, and not seriously disputed by the plaintiff; but the plaintiff says all that Little did was to make a model for the purpose of experiment, and then abandoned his idea.   In support of this position, reliance is placed upon the conceded facts that Little, although he had opportunity, never applied his device to a car; that two weeks after constructing his machine he removed the rock shaft and substituted an endless cord for the purpose of opening and closing the door, and thereafter sent the door with an endless cord, and without a rock shaft, to Washington, and there obtained a patent for his machine in that form.   The defendant, on the other hand, relies upon the fact proved that Little did open and close a door by means of his machine; that he applied it to a door nearly six feet high, and used it during two weeks to open and close such a door, and thereby demonstrated the capacity of his device to open and close the doors of the ordinary street-car; that numerous persons saw the machine in operation, and that within three and a half years Little made a reproduction of his device, showing that he did not abandon the idea, although he never sought to secure an exclusive right thereto by means of a patent.

In regard to these facts I remark that the fact that Little never applied his device to the door of a car does not prove that his invention was never completed.   What Little undertook to do was to invent a machine intended to open and close a door, and to show that his invention was capable of being used to open and close the door of a street car.   He did invent a machine, the object of which was to open and close a door, and by applying it to the door to which it was applied he did demonstrate that it was capable of opening and closing the door of a street-car.   The fact that he did not patent this machine, and shortly after did patent another device intended to accomplish the same purpose, while it goes to show that, in his opinion, the latter was the better machine, does not prove that the former invention was incomplete.   Little had the right to abandon his first machine to the public, and he did so; but such abandon-

ment by no means compels the conclusion that his first invention was never completed.

Indeed, it seems impossible for the plaintiff to contend that Little's first machine did not display a completed invention, for the machine was in all respects similar to the machine described in the O'Haire patent, which the plaintiff is claiming in this suit, to have been a completed invention by O'Haire. And it is impossible to hold that Little allowed his invention to rest in experiment only, for the proof is clear that he applied it to a door, and that by such application he showed its capacity to open and close the door of a car. Moreover, there is no evidence to show that Little found any difficulty in the operation of the machine referred to, or ever contemplated any changes in it. On the contrary, the models he subsequently made reproduced the former machine without change, except as to size.

The controlling law in a case like this is to be found in *Coffin* v. *Ogden*, 18 Wall. 120, where it is held that the invention or discovery relied on as a defense must have been complete, and capable of producing the result sought to be accomplished; and this must be shown by the defendant. The proofs here, in my opinion, come fully up to the requirements of the case cited; and, according to the ruling of the supreme court in that case, the defense of want of novelty must be held to have been here made out in respect to the O'Haire patent.

The second patent set forth in the bill is No. 161,568. This patent was issued March 30, 1875, to the plaintiff for an improvement in signaling drivers on street cars. The invention sought to be secured by this patent is stated in the specification to consist in "a new combination and arrangement with a street car of bells or gongs, and of the cords or straps which operate them." The object of the invention is stated in the specification to be to enable passengers in a street-car to signal the driver without leaving their seats. The claim is as follows:

"In a street-car two bell-cords, each provided with a system of pull-straps, and arranged in such a manner as to pass along the lower margin of the roof on the opposite side of the car, and connect directly with a signal bell or gong attached to the outside of the driver's end of the car, substantially as and for the purpose set forth."

The novel idea embodied in the invention described in this patent appears to consist in the employment of two bell-cords of a certain description, arranged in a peculiar way, for the purpose of ringing a bell in a street-car. The description of cord employed is a cord having pull-straps attached thereto of sufficient length to be within easy

reach of a seated passenger. The arrangement of these cords is the following: On each side of the car one such cord is placed, running along the lower margin of the roof, having one end attached to the inside of the car at one end, and the other end attached to a bell on the outside of the driver's end of the car. When so arranged the bell can be rung by any seated passenger by pulling any one of the pull-straps. In this invention the novelty cannot, of course, consist in the employment of a cord to ring a bell, nor in the use of a cord with pull-straps attached thereto. Those are old devices. Nor can the novelty be found in the length of the pull-straps, for no particular length is mentioned in the patent as necessary, and to bring a strap within reach by increasing its length is nothing new.

Neither was the plaintiff the first to combine such a cord and such pull-straps with a bell. Arrangements of that description have been long in use. But it is said that the novelty consists in this: that before Stephenson, a cord, pull-straps, and bell were placed in the top of a car, and that Stephenson changed the location from the top of the car to the lower margin of the roof, and thereby the cord, pull-straps, and bell were adapted to serve a substantially different and useful purpose. I am, however, unable to discover any different purpose accomplished by this change of the location of the cord, pull-straps, and bell of a car. The cord, pull-straps, and bell all act in precisely the same way when placed at the lower margin of the roof as when placed in the top of the roof, and the result produced is the same.

Again, it is said, Stephenson duplicated the cord, pull-straps, and bell. But the cord, pull-straps, and bell that Stephenson places on one side of his car, have no connection with the cord, pull-straps, and bell on the opposite side. It is a simple duplicate of an old device, without alteration of its mode of action or change in the result. Neither by duplicating the cord, pull-straps, and bell, nor by changing their location from the top of the roof to the lower margin of the roof, nor by both together,—and this is all that Stephenson did, according to his own witnesses,—was any new result attained. It is doubtless more convenient for some to use the cord, pull-straps, and bell, when located where Stephenson locates them, but no new result is accomplished by using the device in the new place. The apparatus is the same, and the result obtained by its use is the same as before. To authorize a patent the law requires the invention of a new thing. It is not satisfied by inventing a new place for an old thing without change of result.

I observe from the testimony that some of the experts entertain the opinion that by placing the cord, pull-straps, and bell along the side of a car a combination is effected with the car, or the sides of the car, which properly form the subject of a patent. And there are words in this patent that may have been intended to indicate that the invention consists in a combination, one element of which is a street-car. But I am obliged to confess myself unable to understand how the car, or the sides of the car, can be said to combine with the cord, pull-straps, and bell to produce the result sought, namely, the ringing of the bell. If so, then there is a patentable combination between the front-door bell and the house wherein it rings; between the church bell and the church. The cord, pull-straps, and bell are placed in a car in order that the bell when rung may be within hearing distance of the driver of the car; but there is no combination between the bell and the car in the legal sense, according to my understanding of the law.

The last position taken in support of this patent is that the invention consists in the addition of the pendants to the cord, and drawing the cord taut, instead of leaving it slack; and, it is said, drawing the cord taut and attaching to it a pendant, hanging within easy reach of a seated passenger, turned the old device that was a failure into a success. One difficulty with this position is that the patent says nothing about drawing the cord taut. Nowhere in the patent is mention made of a taut cord, and in the drawings attached to the patent the cord is not taut, but slack. Nor is it possible to gather from any part of the specification the idea that a taut cord is a necessary feature of the invention. Another difficulty is that attaching pendants to a cord for the purpose of enabling the cord to be pulled by those who may have occasion to pull it, is not a new idea first conceived by the plaintiff. If to attach a pull-strap to a cord be anything more than duplicating the cord, Stephenson was not the first to conceive such an idea, as the testimony in this case shows. For these reasons I am unable to sustain the patent under consideration as being for a new and useful invention made by the plaintiff, and must hold that it affords no ground for an action against the defendants.

The third patent set forth in the bill was issued to John Stephenson September 7, 1875, and is numbered 167,585. The invention described in this patent is therein stated to consist—

"In combining a mirror with the front hood of the car; it being so arranged in connection therewith, and with an opening in the front end of the car, as to give to the driver a clear view of the inside of the car, and through the

entrance door of the latter, and that without the necessity of his having to turn round for such purposes; thereby enabling him, without withdrawing his attention from the horses, to see when it is necessary to stop, either to receive a passenger, or to allow one to get out."

The claim is as follows:

" The combination of a bonnet, provided with a mirror, with an opening, or an opening covered by a transparent medium, in the front end of a street car, substantially as and for the purpose set forth."

In support of this patent it is contended that a new effect is produced by employing a mirror as the plaintiff does, because it enables a person who is outside a building or room to see through the room outside of which he is, and what is transpiring within the room and beyond the room in the rear of it; or, to quote from the expert called by the plaintiff,—

" By the combination described in the patent the driver can see the interior of a room consisting of a car, and, also, he can look through such room, and see the space in the rear, and he can do this while himself outside of the room into and through which he can see."

But this is not a statement of any new effect accomplished by a peculiar and novel method of using a mirror. It is simply a description of the common effect of a mirror; the only difference being in the object reflected by the mirror. A mirror is not applied to a new use when used to reflect a certain object for the first time. Is there any doubt that to the question how one could be enabled to see behind him the interior of a car, and also look through such car and see the space in the rear, being himself outside such car, that the answer of any intelligent person would be, "Employ a mirror?" Is there any doubt that every mechanic of ordinary skill, knowing the effect produced by a mirror, and knowing, also, that mirrors had been employed to reflect to the driver of a steam-car an image of the train behind him, and being required to devise a method to enable the driver of a street-car to do what the plaintiff claims his invention enables the driver to do, would at the moment, and without experiment, say, "Employ a mirror?" It does not seem to me possible that such a problem could be presented to the mind of a mechanic of ordinary intelligence without suggesting just such a use of a mirror as the plaintiff has described.

I am unable to see, therefore, how this patent can be sustained, upon the ground that a new effect is accomplished by the plaintiff's invention, or a new function performed by a mirror used as the plaintiff uses one. The most that can be said is that the occasion

was new; and, in view of the evidence, to say that is not entirely easy. The case seems clearly to be one of double use. It is also said that the plaintiff's invention discloses a new combination, first employed by him to accomplish the result described. According to the claim of the patent the invention consists in combining the bonnet of a car, provided with a mirror, with an opening in the front end of the car, in such a manner that objects within the car and in the rear of the car will be reflected in the mirror. But no combination between the elements described is effected by this arrangement. Between the bonnet and the mirror there is no co-operation. The only relation which the bonnet bears to the mirror is that of a support. No change in the operation or action of the mirror would result from substituting a different support in place of the bonnet. Any mirror located in the same place would without the hood reflect objects visible through an opening in the end of the car, in the same way that the plaintiff's mirror does. Nor is there any combination between the mirror and the opening in the end of the car through which the light passes to the mirror. The mirror does not co-operate with the opening; it simply, and of itself, reflects the objects before it in the same way as does any mirror located in any other place. Indeed, the mere statement of the claim that the combination sought to be secured is between a mirror and an opening, and that the result of the combination is a reflection on the mirror of the objects beyond the opening, to my mind sufficiently shows that the patent does not disclose a new and useful combination invented by the plaintiff.

These views compel the conclusion that the patent in question is void, and renders it unnecessary to consider the other grounds of defense to this patent, serious as some of them appear to be.

My determination upon the whole case, therefore, is that the patents set forth in the bill afford no ground of action against the defendant.

The bill is accordingly dismissed, and with costs.